**IN THE CIRCUIT COURT OF ST. CHARLES COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| SHELTER INSURANCE COMPANIES, )<br><br>Plaintiff, )<br>)<br>v. )<br>)<br>COLONY NATIONAL INSURANCE COMPANY,)<br>)<br>SERVE: )<br>Missouri Department of Insurance )<br>c/o Director of Insurance )<br>301 West High Street, Room 530 )<br>Jefferson City, MO 65101 )<br>)<br>and )<br>)<br>RICHARD AZAR d/b/a R.A. WHOLESALE, )<br>)<br>HOLD for Service: )<br>Richard Azar )<br>1172 W. Terra Lane )<br>O'Fallon, MO 63366 )<br>)<br>and )<br>)<br>JONATHAN DALE HEFFNER, )<br>HOLD for Service: )<br>125 Lottie Drive )<br>Troy, MO 63379 )<br>)<br>Defendants. ) | Cause No.:   0511-CV06370<br><br>Division No.:  1<br><br>FILED<br>SEP 2 9 2008<br>Circuit Clerk<br>ST. CHARLES COUNTY |

**PETITION FOR EQUITABLE GARNISHMENT (§ 379.200 R.S.MO.)**

COMES NOW Plaintiff, Shelter Insurance Companies, by and through its attorneys, and

for its Petition for Equitable Garnishment pursuant to Section 379.200, R.S.Mo., states:

1.     Plaintiff Shelter Insurance Companies (hereinafter "Plaintiff") insured the

property known as 1172 W. Terra Lane, O'Fallon Missouri (hereinafter "subject property"),

owned and leased by Walter Schappe, and the holder of a Judgment as set forth herein.

2.      Colony National Insurance Company (hereinafter "Defendant Colony"), is a foreign corporation doing substantial business in Missouri, and is now, and was at all times hereinafter mentioned, authorized to do business, and to sue, and be sued in the State of Missouri.

3.      Defendant, Richard Azar d/b/a R.A. Wholesale, (hereinafter "Defendant Azar") at all times mentioned herein, operated a fictitious Missouri company, and at all times referred to herein was the lessee of the subject property, and operated a used car lot and automobile repair shop at the subject property.

4.      Defendant, Jonathan Dale Heffner, (hereinafter "Defendant Heffner"), was an employee of Defendant Azar, and was at all times mentioned herein acting in his usual scope and course of his employment as a mechanic.

5.      Pursuant to Section 379.200, R.S.Mo., Defendants Azar and Heffner are nominal parties to this lawsuit.

6.      Upon information and belief, at all times mentioned herein, Defendant Azar maintained a commercial policy of insurance, Policy No.: GP 3158652, effective dates of March 11, 2004, to March 11, 2005, with Defendant Colony (hereinafter "Colony Policy"). (See Exhibit 1, Policy No. GP 3158652, attached hereto and incorporated herein)

7.      On or about February 9, 2005, Defendant Heffner, while acting in the usual scope and course of his employment, was repairing vehicles at the subject property. Defendant Heffner carelessly spilled gasoline from a gas tank, and simultaneously dropped a wrench in or near the spilled gasoline, causing an explosion and fire at the subject property.

8.      On or about August 8, 2007, a Petition for Negligence was filed against Defendants Azar and Heffner in St. Charles County, Cause No. 0511-CV06370, seeking property damages.

9.      On May 28, 2008, Plaintiff obtained a Final Judgment against Defendants Azar and Heffner in the amount of $176,311.96. (See Exhibit 2, Judgment, attached hereto and incorporated herein).

10.     Upon information and belief, the Colony Policy was in effect at the time the damage to the subject property was caused by Defendants Azar and Heffner.

11.     This action is brought pursuant to Section 379.200 R.S.Mo., and is an action in equity against Defendant Colony to apply the insurance proceeds as satisfaction of the above referenced Judgment, as the policy provided coverage for the accident that is the basis of the Judgment.

12.     This proceeding is brought more than thirty (30) days after the Judgment was entered against Defendants Azar and Heffner.

13.     Upon information and belief, Defendant Colony has refused to provide coverage and pay the insurance money provided for in the Colony Policy between Defendant Azar and Defendant Colony.

14.     As a direct and proximate result of Defendant Colony's failure to pay the insurance money provided for in its policy with Defendant Azar, Plaintiff has sustained damages in the amount of $176,311.96, plus post-Judgment interest and attorneys' fees.

WHEREFORE, Plaintiff, Shelter Insurance Companies, prays for Judgment against Defendant Colony National Insurance Company, in the amount of $176,311.96, plus post-Judgment interest, attorneys' fees, and any and all other further relief this Court deems just and proper.

_____
Robert W. Cockerham, #31984
Richard D. Gerber, #34384
**BROWN & JAMES, P.C.**
Attorneys for Plaintiff
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2770
(314) 421-3400
(314) 421-3128 (Facsimile)

10/26/2006  16:37  6359498786         BARKLAGE BRETT                    PAGE  05/43

## GARAGE POLICY DECLARATIONS

# Colony National Insurance Company

**ITEM ONE**
Named Insured and P.O. Address                    Policy Number GP 3158652

R.A. WHOLESALE
RICHARD AZAR, DBA                                  Renewal of Number GP 3063748
1082 W. TERRA LN
OFALLON      MO 63366

Agent and P.O. Address          Agency No.        **25% MINIMUM EARNED PREMIUM**
Michael F. Concannon, Inc.         24009
930 Kehrs Mill Rd., Ste. 207                      # NO FLAT CANCELLATIONS
Ballwin,      MO  63011

Policy Period:  From: 03/11/2004  To: 03/11/2005   12:01 A.M., Standard Time at address of the Named Insured as stated.
Named Insured is (Check one):    [X] Individual   [ ] Partnership   [ ] L.L.C.   [ ] CORPORATION
Business Description: DEALER

ITEM TWO-SCHEDULE OF COVERAGES AND COVERED AUTOS:  This policy provides only those coverages identified by entry of a PREMIUM and by entry of the applicable COVERED "AUTO" DESIGNATION SYMBOL in the columns below (numerical symbols are defined in Section 1 o the Garage Coverage Form).  Entry of a covered "auto" symbol next to Liability provides coverage for "garage operations", Page 2 of 3 of ov GARAGE POLICY DECLARATIONS replaces the AUTO DEALERS SUPPLEMENTARY SCHEDULE and the NON-DEALERS AND TRAILER DEALER! SUPPLEMENTARY SCHEDULE referred to in the GARAGE COVERAGE FORM.

| GARAGE COVERAGE | | COVERED "AUTOS" | LIMIT — THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | | | PREMIUM |
|---|---|---|---|---|---|---|
| | | | Each "Accident" "Garage Operations" | | Aggregate-"Garage Operations" | |
| | | | "Auto" Only | Other Than "Auto" Only | Other Than "Auto" Only | |
| LIABILITY | | 22,29,27 | $100,000 | $100,000 | $200,000 | $3,244 |
| GARAGEKEEPERS | SPECIFIED CAUSES OF LOSS | | SEE LIMITS OF INSURANCE ON PAGE 2 OF DECLARATIONS | | | |
| | COMPREHENSIVE | | | | | |
| | COLLISION | | | | | NOT COVEREI |
| PHYSICAL DAMAGE | SPECIFIED CAUSES OF LOSS | 31 | SEE LIMITS OF INSURANCE ON PAGE 2 OF DECLARATIONS | | | |
| | COMPREHENSIVE | | | | | |
| | COLLISION | 31 | | | | $4,023 |
| MEDICAL PAYMENTS | | 22 | $1,000 | | | $50 |
| UNINSURED/UNDERINSURED MOTORIST | | 26 | SEPARATELY STATED IN THE ENDORSEMENT | | | $700 |
| PERSONAL INJURY PROTECTION | | | SEPARATELY STATED IN THE ENDORSEMENT | | | NOT COVEREI |
| FIRE LEGAL LIABILITY | | | SEPARATELY STATED IN THE ENDORSEMENT | | | NOT COVEREI |
| BUILDING & PERSONAL PROPERTY | | | SEPARATELY STATED IN THE COVERAGE PART DECLARATIONS | | | NOT COVEREI |
| TERRORISM COVERAGE | | | | | | NOT COVEREI |

TOTAL PREMIUM  $8,017    STATE TAX  $410.85    OTHER TAX         STAMPING FEE          POLICY FEE  $200:0

TOTAL ADVANCE PREMIUM  $8,627.

_Micha Concannon_ ───── 04/22/04

G1501 1002      Page 1 of 3                          Authorized          Date
                                                     Representative
                              Insured                                10/26/2006  04:43PM

---

**EXHIBIT**

tabbies  **1**

10/26/2006  16:37   6369498786              BARKLAGE BRETT              PAGE  06/43

Named Insured: R.A. WHOLESALE          Garage Policy Number: GP 315B652
RICHARD AZAR, DBA

ITEM THREE - LOCATIONS WHERE YOU CONDUCT GARAGE OPERATIONS.

| LOC. NO. | Address including ZIP Code - state your main business location as Location No. 1 |
|---|---|
| 1. | 1082 W. TERRA LN., O'FALLON, MO 63366 |
| 2. | |

ITEM FOUR - LIABILITY COVERAGES - PREMIUMS.

| LOC. NO. | Rating Units | Payroll | Rate | Premium |
|---|---|---|---|---|
| 1. | 2.5 | | 1053. | $ 2634 |
| 2. | | | | $ |

ITEM FIVE - GARAGEKEEPERS COVERAGES AND PREMIUMS.

| LOC. NO. | Coverages | Limit of Insurance for Each Location | | | Premium For All Locations |
|---|---|---|---|---|---|
| 1. | Specified Causes of Loss, or Comprehensive | $  MINUS $ <br> LOSS SUBJECT TO $ | DEDUCTIBLE FOR EACH COVERED AUTO FOR <br> MAXIMUM DEDUCTIBLE FOR ALL SUCH LOSS | | Specified Causes of Loss <br> $ <br> Comprehensive <br> $ <br> Collision <br> $ |
| | Collision | $  MINUS $ | DEDUCTIBLE FOR EACH COVERED AUTO | | |
| 2. | Specified Causes of Loss or Comprehensive | $  MINUS $ <br> LOSS SUBJECT TO $ | DEDUCTIBLE FOR EACH COVERED AUTO FOR <br> MAXIMUM DEDUCTIBLE FOR ALL SUCH LOSS | | |
| | Collision | $  MINUS $ | DEDUCTIBLE FOR EACH COVERED AUTO | | |
| | | | TOTAL PREMIUM $ | | |

GARAGEKEEPERS COVERAGE applies on a legal liability basis unless the Primary Option has been selected indicated by "X".
☐  PRIMARY INSURANCE  GARAGEKEEPERS COVERAGE is changed to apply without regard to your or any other "insured's" legal liability fo "loss" to a covered "auto" and is Primary insurance.

ITEM SIX - PHYSICAL DAMAGE COVERAGE FOR DEALERS AND NON-REPORTING PREMIUM.
Each of the following Physical Damage coverages that is indicated in ITEM TWO applies only to the type of "autos" and interests indicated by "X"

| ☒ Used Autos | ☐ Your interest in covered "autos" you own |
|---|---|
| ☐ New Autos | ☒ Your interest and the interest of any creditor named as loss payee. |
| | ☐ All interest in covered "autos" while in your possession on consignment for sale |

| LOC. NO. | Coverages | Limit of Insurance for Each Location | | | Premium For All Locations |
|---|---|---|---|---|---|
| 1. | Specified Causes of Loss, or Comprehensive | $ 150,000 MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO FOR <br> LOSS SUBJECT TO $ 5,000 MAXIMUM DEDUCTIBLE FOR ALL SUCH LOSS <br> ☐ SEE G1514a RESTRICTIVE ENDORSEMENT | | | Specified Causes of Loss <br> $ 2,650 <br> Comprehensive <br> $ <br> Collision <br> $ 1,373 |
| 2. | Specified Causes of Loss, or Comprehensive | $  MINUS $  DEDUCTIBLE FOR EACH COVERED AUTO FOR <br> LOSS SUBJECT TO $  MAXIMUM DEDUCTIBLE FOR ALL SUCH LOSS <br> ☐ SEE G1514a RESTRICTIVE ENDORSEMENT | | | |
| ALL | Collision | $ 150,000 MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO | | | |

Our Limit of Insurance for "loss" at locations other than those stated in ITEM THREE is    | TOTAL PREMIUM $  4,023
$ 25,000    at additional locations where you store covered "autos" and $ 25,000    while in transit.

Loss Payee: MANHEIM AUTOMOTIVE FINANCIAL SERVICES 400 NORTHRIDGE RD STE 800 ATLANTA, GA 30350

G1501 1002        Page 2 of 3

10/26/2006   04:43PM

Case: 4:08-cv-01978-CAS   Doc. #: 3   Filed: 12/23/08   Page: 7 of 47 PageID #: 133

10/26/2006  16:37  6369498786                  BARKLAGE BRETT                  PAGE  07/43

Named Insured: R.A. WHOLESALE                    Garage Policy Number:  GP  3158652
                RICHARD AZAR, DBA

ITEM SEVEN - SCHEDULE OF SPECIFICALLY DESCRIBED "AUTOS".

| NO. | Year, Make, Body Type, Vehicle Identification Number | | | Stated Amount |
|---|---|---|---|---|
| 1. | 1994   CHEVY | 3500 | 1GBKC34F0RJ115872 | |
| 2. | | | | |
| 3. | | | | |

| NO. | Territory | GVW | Use | Radius | Code | Loss Payee Number |
|---|---|---|---|---|---|---|
| 1. | 4 | Medium | SERVICE | INTERMED | 21299 | |
| 2. | | | | | | |
| 3. | | | | | | |

COVERAGES (Will apply as indicated by entry of a premium.)

| | Liability | Specified Causes of Loss | | Comprehensive | | Collision | | Medical Payments | UM/UIM | Personal Injury Protection |
|---|---|---|---|---|---|---|---|---|---|---|
| NO. | Premium | Ded | Premium | Ded | Premium | Ded | Premium | Premium | Premium | Premium |
| 1. | $610 | | | | | $ | $ | | $50 | |
| 2. | | | | | | $ | $ | | | |
| 3. | | | | | | $ | $ | | | |
| Total | $610 | XXX | $ | XXX | $ | XXX | $ | $ | $50 | $ |

Loss Payee:  1)
             2)
             3)
             4)
             5)

┌─────────────────────────────────────────────────────────────┐
│  See SCHEDULE OF GARAGE FORMS AND ENDORSEMENTS included in this Policy. │
└─────────────────────────────────────────────────────────────┘

IMPORTANT NOTICES TO POLICYHOLDER: (Please read carefully)
A.   Any misrepresentation or any concealment or fraud on the part of the Insured which misrepresentation, concealment or fraud affects
     either the acceptance of the risk or the hazard assumed by the Company shall render this policy void.
B.   Notice of all accidents or occurrences must immediately be given to the Company indicated on page 1 whether or not such accidents or
     occurrences appear likely to involve this policy.

G1501 1002          Page 3 of 3                        10/26/2006   04:43PM

Sally M. Hughes - FAXCOM 061026214317O592.TIF

10/26/2006  16:37  6369498786                    BARKLAGE BRETT                    PAGE  08/43

ENDORSEMENT

Insured: R.A. WHOLESALE
RICHARD AZAR, DBA
Policy Number: GP 3158652

## SCHEDULE OF GARAGE FORMS AND ENDORSEMENTS
### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|

FORMS APPLICABLE - GARAGE COMMON FORMS

| | |
|---|---|
| G1500 (04-03) | GARAGE POLICY JACKET |
| G1501 (10-02) | GARAGE POLICY DECLARATIONS |
| G1502 (04-03) | SCHEDULE OF GARAGE FORMS AND ENDORSEMENTS |
| G1503 (10-02) | GARAGE LIABILITY DEDUCTIBLE |
| G1504 (10-02) | CHANGES IN GARAGE FORM |
| G1505 (10-02) | ADDITIONAL GARAGE EXCLUSIONS |
| CA0005 (07-97) | GARAGE COVERAGE FORM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION |
| U094 (07-02) | SERVICE OF SUIT |
| U134C (07-02) | FUNGI OR BACTERIA EXCLUSION |
| UCA2361 (11-02) | WAR, CERTIFIED ACTS OF TERRORISM EXCLUSIONS |

FORMS APPLICABLE - GARAGE OPTIONAL COVERAGES

| | |
|---|---|
| CA2505 (12-93) | GARAGE LOC MED PAY COVERAGE |
| CA9944 (12-93) | LOSS PAYABLE |

FORMS APPLICABLE - STATE SPECIFIC

| | |
|---|---|
| U173 (07-02) | CANCELLATION |
| CA2104 (10-97) | MO-UNINSURED MOTORISTS COVERAGE |

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

G1502 0403                         Insured                    10/26/2006   04:43PM

Sally M. Hughes - FAXCOM 06102621431701592.TIF

10/26/2006  16:37  6369498786                    BARKLAGE BRETT                    PAGE  09/43

ENDORSEMENT

Insured: R.A. WHOLESALE
RICHARD AZAR, DBA
Policy Number: GP 3158652

(The above information is required only when this form is added after the policy is issued.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

GARAGE LIABILITY DEDUCTIBLE

This endorsement modifies insurance provided under the GARAGE COVERAGE FORM.

SECTION II - LIABILITY COVERAGE is changed as follows:

The damages caused in any one "accident" that would otherwise be payable under LIABILITY COVERAGE will be reduced by the Liability Deductible shown prior to the application of the LIMIT OF INSURANCE provision.

The deductible amount shown will also apply toward all expenses we incur in the handling and investigation of each claim, even if no payment is made to a claimant.

Liability Deductible $     500     per "accident".

To settle any claim or suit we will pay all or any part of the deductible shown above.  You must reimburse us for the deductible or the part of the deductible we paid.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

G1503 1002

                              Insured                    10/26/2006  04:43PM

ENDORSEMENT

Insured: R.A. WHOLESALE
RICHARD AZAR, DBA
Policy Number: GP 3158652

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN THE GARAGE COVERAGE FORM

### CHANGES IN SECTION II - LIABILITY COVERAGE

Part B. EXCLUSIONS is changed as follows: Paragraphs 18. through 24. are added as follows:

**18.     ASBESTOS**

"Bodily injury" or "property damage" arising out of: the use or installation of asbestos in constructing or manufacturing any good, product or structure; the removal of asbestos from any good, product or structure; the manufacturing, transportation, storage or disposal of asbestos or goods or products containing asbestos; or inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos.

**19.     ASSAULT AND BATTERY**

"Bodily injury" or "property damage" arising out of assault and battery, or out of any act or omission in connection with the prevention or suppression of such acts, including failure to warn, train, or supervise, whether caused by or at the instigation or direction of the "insured", his employees, customers or any other person.

**20.     LEAD CONTAMINATION**

"Bodily injury" or "property damage" arising out of the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing, inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead in any form including, without limitation, claims arising out of continuous, intermittent or repeated exposure to and/or ingestion, inhalation or absorption of lead. This exclusion applies regardless of whether the "bodily injury" or "property damage" results from inhaling, eating, drinking, physical contact or any other means of lead contamination.

**21.     RADIUS OF OPERATION - SPECIFICALLY DESCRIBED "AUTOS"**

"Bodily injury" or "property damage" which occurs while a covered "auto" which is specifically described in the DECLARATIONS is being driven beyond the stated Radius.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

G1504 1002          Page 1 of 4

Insured                    10/26/2006   04:43PM

22.     SUBSIDENCE OF LAND

"Bodily injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising out of natural causes or resulting from your operations, or operations of any subcontractor of yours.

23.     SERVICE USE "AUTOS"  (Tow Trucks, Car Haulers,  Parts Trucks,  Road Service Trucks, etc.)

"Bodily injury" or "property damage" arising out of the use of owned "autos" used in "Garage Operations" unless the "auto" is specifically described in the DECLARATIONS.

24.     DRIVE-AWAY OPERATIONS

"Bodily injury" or "property damage" which occurs while a covered "auto" is being driven or transported from the point of purchase or distribution to its destination, if such points are more than 300 road miles apart, unless this limit is extended by completion of the DRIVE-AWAY SCHEDULE in the ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES endorsement.

Part D. DEDUCTIBLE is deleted in its entirety and replaced by our Garage Liability Deductible endorsement.

CHANGES IN SECTION III - GARAGEKEEPERS COVERAGE

Part B. EXCLUSIONS is changed as follows:

1.     Paragraph 1., subparagraph b. Theft. is replaced by:

b.     Theft or Conversion.

(1)  "Loss" due to theft or conversion caused in any way by you, your employees or by your shareholders; or

(2)  "Loss" due to theft if at the time of "loss" the keys for the stolen "auto" were in that "auto", or upon that "auto".

2.     Paragraph 1. is changed to include the following subparagraphs:

e.     Transport and Towing.

Any covered "auto" while it is being transported, towed, or put on or off the towing apparatus by any "insured" unless coverage is provided on a scheduled "auto" basis by completion of the GARAGEKEEPERS IN TRANSIT SCHEDULE in the ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES endorsement.

f.     "Autos" on consignment for sale.

"Loss" to any "auto" not owned by you while in your possession on consignment for sale.

Part C. LIMIT OF INSURANCE AND DEDUCTIBLE is replace by;

1.  The most we will pay for each "loss" at each location is the Garagekeepers Coverage Limit of Insurance shown in the DECLARATIONS for that location minus the appliable deductibles shown in the DECLARATIONS.

2.  Regardless of the value of each covered "auto", the most we will pay for "loss" to any one "auto" is $25,000 unless another Limit of Insurance is shown by completion of the VALUE LIMITATION SCHEDULE in the ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES endorsement.

3.  Sometimes to settle a claim or "suit", we may pay all or any part of the deductible.  If this happens you must reimburse us for the deductible or that portion of the deductible that we paid.

**CHANGES IN SECTION IV - PHYSICAL DAMAGE COVERAGE**

Part B. EXCLUSIONS is changed as follows:

Paragraph 4. subparagraph c. is replaced by;

"Loss" to any any covered "auto" while being driven or transported from the point of purchase or distribution to its destination if such points are more than 300 road miles apart unless this limit is extended by completion of the DRIVE - AWAY SCHEDULE in the ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES endorsement.

Paragraph 6. and 7. are added as follows:

6.  Theft or Conversion

(1) We will not pay for "loss" to a covered "auto" caused by or resulting from theft or conversion caused in any way by you, your employees or by your shareholders;

(2) We will not pay for "loss" to a covered "auto" caused by or resulting from theft if at the time of "loss" the keys for the stolen "auto" were in that "auto", or upon that "auto".

7.  Service Use "Autos" (Tow Trucks, Car Haulers, Parts Trucks, Road Service Trucks, etc.)

We will not pay for "loss" to owned "autos" used in "garage operations" unless the "auto" is specifically described in the DECLARATIONS.

Part C. LIMITS OF INSURANCE is changed as follows:

Paragraph 1. subparagraph c. is added as follows:

c.  The amount shown as Stated Amount for the "auto" specifically described in the DECLARATIONS.

Paragraph 2. subparagraph d. is added as follows:

d.  Regardless of the value of a covered "auto" the most we will pay for "loss" to any one "auto" is $25,000 unless another Limit of Insurance is shown by completion of the VALUE LIMITATION SCHEDULE in the ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES endorsement.

G1504 1002        Page 3 of 4

Part D. DEDUCTIBLE is replace by:

**D. DEDUCTIBLE**

1. For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the DECLARATIONS.

2. The maximum deductible for all such loss is shown in the DECLARATIONS.

### CHANGES IN SECTION V - GARAGE CONDITIONS

Part B. GENERAL CONDITIONS is changed as follows:

Paragraph 6. is replaced by:

**6. MINIMUM PREMIUM**

The premium charged for Liability Coverage is based on the exposures you told us you would have when this policy began.  It is the minimum premium for the policy period indicated.  If this policy is cancelled at your request, we will retain no less than 25%   of the total premium as a Minimum Earned Premium.

G1504 1002        Page 4 of 4

10/26/2006   04:43PM

ENDORSEMENT

Insured: R.A. WHOLESALE
RICHARD AZAR, DBA
Policy Number: GP 3158652

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL GARAGE EXCLUSIONS AND BUY - BACK SCHEDULES

FURNISHED AUTO EXCLUSION - DEALERS ONLY

We will not pay for "bodily injury", "property damage" or "loss" arising out of the use of covered "autos" owned by you and "furnished or available for regular use" of owners, partners, officers, employees, spouses, children or relatives of yours or any other person.  "Furnished or available for regular use" means the right to frequent use of an "auto" for purposes that are not necessary or incidental to "garage operations".  This exclusion does not apply to the persons named in the Schedule of Drivers Furnished "Autos".

| Schedule of Drivers Furnished "Autos" |
| --- |
| RICHARD JOSEPH AZAR |
| SHERRY C AZAR |
| KIRK CARLYLE BOWMAN |
|  |

ALL OTHER TERMS AND CONDITONS OF THE POLICY REMAIN UNCHANGED.

G1505 1002          Page 1 of 2                    Insured                    10/26/2006   04:43PM

**YOUTHFUL DRIVER EXCLUSION - DEALERS ONLY**

We will not pay for "bodily injury", "property damage" or "loss" while anyone under the age of twenty-one (21) is operating a covered "auto" at any time.  This exclusion does not apply to the persons named in the Schedule of Youthful Drivers nor to a prospective purchaser while on a test-drive accompanied by you or your employee.

| Schedule of Youthful Drivers |
|---|
|  |
|  |
|  |
|  |

**GARAGEKEEPERS - IN TRANSIT SCHEDULE**

The Transport and Towing Exclusion in the CHANGES IN THE GARAGE COVERAGE FORM does not apply to a covered "auto" while it is being transported on, towed by, or put on or off the the covered "autos" listed below:

| Covered Auto No. | Description (Year, Make, Body Type and VIN) | Limit of Insurance For a covered "auto" in tow | Minus Deductible | | $ Charge |
|---|---|---|---|---|---|
| | | | Collision | SCL | |
| | | $ | | | |
| | | $ | | | |
| | | $ | | | |
| | | $ | | | |

**DRIVE-AWAY SCHEDULE**

The limit of 300 miles shown in the Drive-Away exclusions in the CHANGES IN THE GARAGE COVERAGE FORM is extended by completion of the following:

Extended to             road miles for an additional premium of $

**VALUE LIMITATION SCHEDULE**

The Limit of Insurance of $25,000 for "loss" to any one covered "auto" shown in the LIMITS OF INSURANCE sections of the CHANGES IN THE GARAGE COVERAGE FORM is increased by completion of the following:

GARAGEKEEPERS:  The maximum Limit of Insurance for "loss" to any one "auto" is     $

PHYSICAL DAMAGE:  The maximum Limit of Insurance for "loss" to any one "auto" is $

COMMERCIAL AUTO
CA 00 05 07 97

# GARAGE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 21 | Any "Auto" | |
| 22 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 23 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 24 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 25 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 26 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 27 | Specifically Described "Autos" | Only those "autos" described in Item Seven of the Non-Dealers' and Trailer Dealers' Supplementary Schedule or Item Nine of the Dealers' Supplementary Schedule for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in Item Seven or Item Nine). |
| 28 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners, (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 29 | Non-Owned "Autos" Used In Your Garage Business | Any "auto" you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households while used in your garage business. |

CA 00 05 07 97

Copyright, Insurance Services Office, Inc., 1996
Insured

Page 1 of 15

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 30 | "Autos" Left With You For Service, Repair, Storage Or Safekeeping | Any customer's land motor vehicle or trailer or semitrailer while left with you for service, repair, storage or safekeeping. Customers include your "employees", and members of their households, who pay for the services performed. |
| 31 | Dealers "Autos" And "Autos" Held For Sale By Non-Dealers Or Trailer Dealers (Physical Damage Coverages) | Any "autos" and the interests in these "autos" described in Item Seven of the Dealers' Supplementary Schedule or Item Nine of the Non-Dealers' and Trailer Dealers' Supplementary Schedule. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 21, 22, 23, 24, 25, or 26 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 27 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers And Temporary Substitute Autos**

If Liability coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II - LIABILITY COVERAGE**

**A. Coverage**

**"GARAGE OPERATIONS" - OTHER THAN COVERED "AUTOS"**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance - "Garage Operations" - Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

**"GARAGE OPERATIONS" - COVERED "AUTOS"**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance - "Garage Operations" - Covered "Autos" has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

   a. The following are "insureds" for covered "autos":

      (1) You for any covered "auto".

      (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

         (a) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

         (b) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

         (c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations".

         (d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

            (i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

            (ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

         (e) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

      (3) Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

   b. The following are "insureds" for "garage operations" other than covered "autos":

      (1) You.

      (2) Your partners (if you are a partnership), members (if you are a limited liability company), "employees", directors or shareholders but only while acting within the scope of their duties.

2. Coverage Extensions

   a. Supplementary Payments

      In addition to the Limit of Insurance, we will pay for the "insured":

      (1) All expenses we incur.

      (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

      (3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

      (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

      (5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

      (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

CA 00 05 07 97              Copyright, Insurance Services Office, Inc., 1996              Page 3 of 15

Sally M. Hughes - PAXCOM  061626214317059Z.TIF

b.  Out-Of-State Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1)  Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2)  Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. Exclusions

This insurance does not apply to any of the following:

1.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2.  Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a.  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b.  That the "insured" would have in the absence of the contract or agreement.

3.  Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. · Employee Indemnification And Employer's Liability

"Bodily injury" to:

a.  An "employee" of the "insured" arising out of and in the course of:

(1)  Employment by the "insured"; or

(2)  Performing the duties related to the conduct of the "insureds" business; or

b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

c.  A person arising out of any:

(1)  Refusal to employ that person;

(2)  Termination of that person's employment; or

(3)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

d.  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (1), (2) or (3) above as directed.

This exclusion applies:

(1)  Whether the "insured" may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5.  Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

            Copyright, Insurance Services Office, Inc., 1996            CA 00 05 07 97

10/26/2006   04:43PM

Sally M. Hughes LPA COM 06/026/14317652 TIF 3 Filed: 12/23/08 Page: 20 of 47 PageID #: 146 Page 20

6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving:

a. Property owned, rented or occupied by the "insured";

b. Property loaned to the "insured";

c. Property held for sale or being transported by the "insured"; or

d. Property in the "insured's" care, custody or control.

But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. Leased Autos

Any covered "auto" while leased or rented to others. But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair.

8. Pollution Exclusion Applicable To "Garage Operations" - Other Than Covered "Autos"

"Bodily injury", "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any "insured";

b. At or from any premises, site or location that is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

c. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations:

(1) To test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the "pollutants"; or

(2) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

d. That are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible.

Loss, cost or expense means those resulting from any:

(1) Request, demand or order that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Paragraphs a. and c.(2) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire. In this exclusion, a hostile fire means one that becomes uncontrollable, or breaks out from where it was intended to be.

9. Pollution Exclusion Applicable To "Garage Operations" - Covered "Autos"

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

CA 00 05 07 97          Copyright, Insurance Services Office, Inc., 1996          Page 5 of 15

Sally M. Hughes - FAXCOM 061026214317 0592.TIF

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 10. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

### 11. Watercraft Or Aircraft

Any watercraft or aircraft except watercraft while ashore on premises where you conduct "garage operations".

### 12. Defective Products

"Property damage" to any of your "products", if caused by a defect existing in your "products" or any part of your "products", at the time it was transferred to another.

### 13. Work You Performed

"Property damage" to "work you performed" if the "property damage" results from any part of the work itself or from the parts, materials or equipment used in connection with the work.

### 14. Loss Of Use

Loss of use of other property not physically damaged if caused by:

a.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

b.  A defect, deficiency, inadequacy or dangerous condition in your "products" or "work you performed". But this exclusion, 14.b., does not apply if the loss of use was caused by sudden and accidental damage to or destruction of your "products" or "work you performed" after they have been put to their intended use.

### 15. Products Recall

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of your "products" or "work you performed" or other property of which they form a part, if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### 16. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### 17. Liquor Liability

"Bodily injury" or "property damage" for which an "insured" may be held liable by reason of:

a.  Causing or contributing to the intoxication of any person;

b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you use the premises in part for the following purposes:

(1) Serving or furnishing alcoholic beverages for a charge whether or not such activity:

(a) Requires a license; or

(b) Is for the purpose of financial gain or livelihood; or

(2) Serving or furnishing alcoholic beverages without a charge, if a license is required for such activity.

Sally M. Hughes - FAXCOM 061026214317 0592.TIF    Page 22

## C. Limit Of Insurance

1. **Aggregate Limit Of Insurance - "Garage Operations" - Other Than Covered "Autos"**

For "garage operations" other than the ownership, maintenance or use of covered "autos", the following applies:

Regardless of the number of "insureds", claims made or "suits" brought or persons or organizations making claims or bringing "suits", the most we will pay for the sum of all damages involving "garage operations" other than "auto" is the Aggregate Limit of Insurance - "Garage Operations" - Other Than Covered "Autos" for Liability Coverage shown in the Declarations.

Damages payable under the Aggregate Limit of Insurance - "Garage Operations" - Other Than Covered "Autos" consist of damages resulting from "garage operations", other than the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos", including the following coverages, if provided by endorsement:

a. "Personal injury" liability coverage;

b. "Advertising injury" liability coverage;

c. Host liquor liability coverage;

d. Fire legal liability coverage;

e. Incidental medical malpractice liability coverage;

f. Non-owned watercraft coverage;

g. Broad form products coverage.

Damages payable under the Each "Accident" Limit of Insurance - "Garage Operations" - Other Than Covered "Autos" are not payable under the Each "Accident" Limit of Insurance - "Garage Operations" - Covered "Autos".

Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance - "Garage Operations" - Other Than Covered "Autos" for Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

The Aggregate Limit of Insurance - "Garage Operations" Other Than Covered "Autos" applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Aggregate Limit of Insurance - "Garage Operations" - Other Than Covered "Autos".

2. **Limit Of Insurance - "Garage Operations" - Covered "Autos"**

For "accidents" resulting from "garage operations" involving the ownership, maintenance or use of covered "autos", the following applies:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" involving a covered "auto" is the Each "Accident" Limit of Insurance - "Garage Operations" - Covered "Autos" for Liability Coverage shown in the Declarations.

Damages and "covered pollution cost or expense" payable under the Each "Accident" Limit of Insurance - "Garage Operations" - Covered "Autos" are not payable under the Each "Accident" Limit of Insurance - "Garage Operations" - Other Than Covered "Autos".

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Deductible

We will deduct $100 from the damages in any "accident" resulting from "property damage" to an "auto" as a result of "work you performed" on that "auto".

Case: 4:08-cv-01978-CAS   Doc. #: 3   Filed: 12/23/08   Page: 23 of 47 PageID #: 149

## SECTION III - GARAGEKEEPERS COVERAGE

### A. Coverage

1. We will pay all sums the "insured" legally must pay as damages for "loss" to a covered "auto" or "auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

   a. Comprehensive Coverage

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. Specified Causes Of Loss Coverage

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft; or

      (3) Mischief or vandalism.

   c. Collision Coverage

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any loss to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the "coverage" when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. Who Is An Insured

   The following are "insureds" for "loss" to covered "autos":

   a. You.

   b. Your partners (if you are a partnership), members (if you are a limited liability company), "employees", directors or shareholders while acting within the scope of their duties as such.

4. Coverage Extensions

   The following applies as Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

   a. All expenses we incur.

   b. The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

   c. All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

   d. All costs taxed against the "insured" in any "suit" against the "insured" we defend.

   e. All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

### B. Exclusions

1. This insurance does not apply to any of the following:

   a. Contractual Obligations

      Liability resulting from any agreement by which the "insured" accepts responsibility for "loss".

   b. Theft

      "Loss" due to theft or conversion caused in any way by you, your "employees" or by your shareholders.

   c. Defective Parts

      Defective parts or materials.

   d. Faulty Work

      Faulty "work you performed".

2. We will not pay for "loss" to any of the following:

   a. Tape decks or other sound reproducing equipment unless permanently installed in a covered "auto".

   b. Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

   c. Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "auto" manufacturer for the installation of a radio.

   d. Equipment designed or used for the detection or location of radar.

Copyright, Insurance Services Office, Inc., 1996      CA 00 05 07 97
                                                                      10/26/2006   04:43PM

Case 1:08-cv-01879-CAB Doc. # 3 Filed: 12/23/08 Page: 24 of 47 PageID #: 150

C. Limit Of Insurance And Deductible

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or "suits" brought, the most we will pay for each "loss" at each location is the Garagekeepers Coverage Limit of Insurance shown in the Declarations for that location minus the applicable deductibles for "loss" caused by collision, theft or mischief or vandalism.

2. The maximum deductible stated in the Declarations for Garagekeepers Coverage Comprehensive or Specified Causes of Loss Coverage is the most that will be deducted for all "loss" in any one event caused by theft or mischief or vandalism.

3. Sometimes to settle a claim or "suit", we may pay all or any part of the deductible. If this happens you must reimburse us for the deductible or that portion of the deductible that we paid.

SECTION IV - PHYSICAL DAMAGE COVERAGE

A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. Comprehensive Coverage

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. Specified Causes Of Loss Coverage

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. Collision Coverage

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. Towing - Non-Dealers Only

   If your business is shown in the Declarations as something other than an "auto" dealership, we will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension

   If your business is shown in the Declarations as something other than an "auto" dealership, we will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. Nuclear Hazard

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. War Or Military Action

      (1) War, including undeclared or civil war;

Sally M. Hadaea 4 PAXCOM 661026214317 0582 ff 3   Filed: 12/23/08   Page: 25 of 47 PageID #: 151 Page 25

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

a. Any covered "auto" leased or rented to others unless rented to one of your customers while their "auto" is left with you for service or repair.

b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such contest or activity.

c. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

f. Any accessories used with the electronic equipment described in Paragraph e. above.

Exclusions 2.e. and 2.f. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

3. False Pretense

We will not pay for "loss" to a covered "auto" caused by or resulting from:

a. Someone causing you to voluntarily part with it by trick or scheme or under false pretenses; or

b. Your acquiring an "auto" from a seller who did not have legal title.

4. If your business is shown in the Declarations as an "auto" dealership, we will not pay for:

a. Your expected profit, including loss of market value or resale value.

b. "Loss" to any covered "auto" displayed or stored at any location not shown in Item Three of the Declarations if the "loss" occurs more than 45 days after your use of the location begins.

c. Under the Collision Coverage, to any covered "auto" while being driven or transported from the point of purchase or distribution to its destination if such points are more than 50 road miles apart.

d. Under the Specified Causes of Loss Coverage, to "loss" to any covered "auto" caused by or resulting from the collision or upset of any vehicle transporting it.

5. Other Exclusions

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown;

b. Blowouts, punctures or other road damage to tires.

C. Limits Of Insurance

1. The most we will pay for "loss" to any one covered "auto" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

        Copyright, Insurance Services Office, Inc., 1996        CA 00 05 07 97
                                                    10/26/2006   04:43PM

Case 4:08-cv-01873-CAS Doc. # 3 Filed: 12/23/08 Page: 26 of 47 PageID #: 152

2. For those businesses shown in the Declarations as "auto" dealerships, the following provisions also apply:

a. Regardless of the number of covered "autos" involved in the "loss", the most we will pay for all "loss" at any one location is the amount shown in the Auto Dealers Supplementary Schedule for that location. Regardless of the number of covered "autos" involved in the "loss", the most we will pay for all "loss" in transit is the amount shown in the Auto Dealers Supplementary Schedule for "loss" in transit.

b. Quarterly Or Monthly Reporting Premium Basis

If, on the date of your last report, the actual value of the covered "autos" at the "loss" location exceeds what you last reported, when a "loss" occurs we will pay only a percentage of what we would otherwise be obligated to pay. We will determine this percentage by dividing your total reported value for the involved location by the value you actually had on the date of your last report.

If the first report due is delinquent on the date of "loss", the most we will pay will not exceed 75 percent of the Limit of Insurance shown in the Auto Dealers Supplementary Schedule for the applicable location.

c. Non-Reporting Premium Basis

If, when "loss" occurs, the total value of your covered "autos" exceeds the Limit of Insurance shown in the Declarations, we will pay only a percentage of what we would otherwise be obligated to pay. We will determine this percentage by dividing the limit by the total values you actually had when "loss" occurred.

D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations provided that:

1. "Auto" Dealers Only Special Deductible Provisions

If your business is shown in the Declarations as an "auto" dealership:

a. The Comprehensive or Specified Causes of Loss Coverage deductible applies only to "loss" caused by theft or mischief or vandalism.

b. Regardless of the number of covered "autos" damaged or stolen, the per "loss" deductible for Comprehensive or Specified Causes of Loss Coverage shown in the Declarations is the maximum deductible applicable for all "loss" in any one event caused by any theft or mischief or vandalism.

2. Non-Dealers Only Special Deductible Provisions

If your business is shown in the Declarations as something other than an "auto" dealership, the Comprehensive Coverage deductible does not apply to "loss" caused by fire or lightning.

SECTION V - GARAGE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. Loss Conditions

1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire.

The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

Case: 1:08-cv-01978-CAS Doc #: 3 Filed: 12/23/08 Page: 27 of 47 PageID #: 153
Sally M. Hughes - FAXCOM 0610262143170592.TIF
Page 27

b. Additionally, you and any other involved "insured" must:

   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

   (4) Authorize us to obtain medical records or other pertinent information.

   (5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

   (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

   (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

   (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

   (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. Loss Payment - Physical Damage Coverages

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

5. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. General Conditions

1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. No Benefit To Bailee - Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Sally M. Hughes - FAXCOM 0610262143170592.TIF

5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. Premium Audit

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. Policy Period, Coverage Territory

Under this Coverage Form, we cover:

a. "Bodily injury", "property damage" and "losses" occurring; and

b. "Covered pollution cost or expense" arising out of "accidents" occurring

during the policy period shown in the Declarations and within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "bodily injury", "property damage", "covered pollution cost or expense" and "losses" while a covered "auto" is being transported between any of these places.

The coverage territory is extended to anywhere in the world if the "bodily injury" or "property damage" is caused by one of your "products" which is sold for use in the United States of America, its territories or possessions, Puerto Rico or Canada. The original "suit" for damages resulting from such "bodily injury" or "property damage" must be brought in one of these places.

8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

SECTION VI - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer.

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

          Copyright, Insurance Services Office, Inc., 1996

Case: 1:08-cv-01979-CAB Doc #: 3 Filed: 12/23/08 Page: 29 of 47 PageID #: 155
Sally M. Hughes -FAXCOM-0610262143170592.TIF    Page 29

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

F. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

G. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your garage business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. An elevator maintenance agreement;

7. That part of any contract or agreement entered into, as part of your garage business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

1. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

a. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

Sally M. Hughes - FAXCOM 061626214317C592.TIF

b.  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

2.  That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

3.  That pertains to the loan, lease or rental of an "auto", to you or any of your "employees" if the "auto" is loaned, leased or rented with a driver; or

4.  That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J.  "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use.

K.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

L.  "Products" includes:

a.  The goods or products you made or sold in a garage business; and

b.  The providing of or failure to provide warnings or instructions.

M.  "Property damage" means damage to or loss of use of tangible property.

N.  "Suit" means a civil proceeding in which:

1.  Damages because of "bodily injury" or "property damage"; or

2.  A "covered pollution cost or expense",

to which this insurance applies, are claimed.

"Suit" includes:

a.  An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O.  "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your work force in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.

P.  "Trailer" includes semitrailer.

Q.  "Work you performed" includes:

a.  Work that someone performed on your behalf; and

b.  The providing of or failure to provide warnings or instructions.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98                    Copyright, Insurance Services Office, Inc., 1998                    Page 1 of 1

Insured                          10/26/2006   04:43PM

Sally M. Hughes - FAXCOM 06102621431 70592.TIF

INTERLINE
IL 00 21 04 9

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION
# ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997         Page 1 of
                                  Insured                    10/26/2006   04:43PM

Sally M. Hughes PAXCOM 0610262143170592.TIF

"Source material", "special nuclear material", and "by-product" material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing our utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the proccessing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997
IL 00 21 04 98
10/26/2006  04:43PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
    Colony Insurance Company,
    Colony National Insurance Company, or
    Colony Specialty Insurance Company
9201 Forest Hill Avenue, Suite 200
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


Other Designee:


U094-0702                                                          Page 1 of 1


                                    Insured

                                               10/26/2006  04:43PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM

A.  **SECTION II - LIABILITY COVERAGE, B.  Exclusions is amended and the following added:**

This insurance does not apply to the following:

**Fungi or Bacteria**

a.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on  or within  a building or structure, including its contents, regardless of whether any other  cause, event,  material or product contributed concurrently or in any sequence to such injury or damage.

b.  Any loss, cost or expenses arising  out of the abating,  testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

B.  **SECTION V - DEFINITIONS is amended and the following added:**

"Fungi"  means any type or  form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Insured

10/26/2006   04:43PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR, CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSIONS

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM

A. SECTION II - LIABILITY COVERAGE, 2. Exclusions, 16. War is deleted and replaced with the following:

This insurance does not apply to:

16. War, Terrorism and Punitive Damages

"Bodily injury", "property damage" or "covered pollution cost or expense" arising, directly or indirectly, out of:

(a) War, including:

(i) undeclared or civil war;

(ii) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(iii) insurrection rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

(b) Any "certified act of terrorism" or "other act of terrorism" including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or "other act of terrorism"; or

(c) Any act of terrorism:

(i) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(ii) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(iii) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in (a), (b) or (c) above; including

(d) Damages arising, directly or indirectly, out of (a), (b) or (c) above that are awarded as punitive damages.

B. With respect to SECTION III - GARAGEKEEPERS COVERAGE and Garagekeepers Coverage - Customers' Sound Receiving Equipment, the following exclusion is added:

This insurance does not apply to:

War and Terrorism

Any "loss", loss of use or rental reimbursement after "loss", arising directly or indirectly out of:

(1) War, including:

(a) undeclared or civil war;

(b) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any governmental, sovereign or other authority using military personnel or other agents;

(c) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

UCA 23 61 11 02

Contains material copyright, ISO Properties, Inc. 2002 with its permission

Page 1 of 2 ☐

Insured

10/26/2006 04:43PM

10/26/2006  16:37    6359498786              BARKLAGE BRETT                    PAGE  37/43

(2) Any "certified act of terrorism" or "other act of terrorism" including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or "other act of terrorism"; or

(3) Any act of terrorism that:

    (a) involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

    (b) is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    (c) pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in (1), (2) or (3) above.

C. With respect to SECTION IV - PHYSICAL DAMAGE COVERAGE the following exclusion is added:

We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

Terrorism

(1) Any "loss", loss of use or rental reimbursement after "loss", arising directly or indirectly out of any "certified act of terrorism" or "other act of terrorism" including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or "other act of terrorism"; or

(2) Any act of terrorism that:

    (a) is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    (b) pathogenic or poisonous biological or chemical materials are released, and it appears that on purpose of the terrorism was to release such materials.

D. The following definitions are added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appears to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

E. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any injury, damage, "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense" that is otherwise excluded under this Coverage Form.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

10/26/2006  16:37   6369498786                    BARKLAGE BRETT                    PAGE  38/43

COMMERCIAL AUTO
CA 25 05 12 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# GARAGE LOCATIONS AND OPERATIONS
# MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. COVERAGE**

We will pay reasonable medical and funeral expenses to or for each person who sustains "bodily injury" to which this coverage applies, caused by an "accident" and resulting from:

1. The maintenance or use of the locations shown in the Declarations and that portion of the roads or other accesses that adjoin these locations for garage business.

2. All operations necessary or incidental to a garage business.

We will pay only those expenses incurred for services rendered within one year from the date of the "accident".

**B. EXCLUSIONS**

This insurance does not apply to:

1. "Bodily injury" resulting from the maintenance or use of any "auto".

2. "Bodily injury" to a person, whether or not an employee of any "insured", if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

3. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

4. "Bodily injury" to any "insured".

**C. LIMIT OF INSURANCE**

Regardless of the number of persons who sustain "bodily injury" or claims made, the most we will pay for "bodily injury" for each person injured in any one "accident" is the Limit of Medical Payments Coverage shown in the Declarations.

**D. CHANGES IN CONDITIONS**

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Garage Condition does not apply.

CA 25 05 12 93          Copyright, Insurance Services Office, Inc., 1993          Page 1 of 1
                                        Insured
                                                        10/26/2006   04:43PM

Sally M. Hughes - FAXCOM_0610262143170592.TIF | Page 39

10/26/2006  16:37   6369498786                    BARKLAGE BRETT                    PAGE   39/43

COMMERCIAL AUTO
CA 99 44 12 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

B. The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C. We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payments to the loss payee, we will obtain his or her rights against any other party.

CA 99 44 12 93          Copyright, Insurance Services Office, Inc., 1993          Page 1 of 1
                                    Insured                            10/26/2006   04:43PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CANCELLATION

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Paragraph A. 2. Cancellation of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a.  10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

(1)  nonpayment of premium or failure to pay a premium when due; or

(2)  conviction of an insured of a crime arising out of acts increasing the hazard insured against;

(3)  violation of any local fire, health, safety, building or construction regulation or ordinance which increases the hazard insured against under the policy;

(4)  any willful or reckless act or omission by an insured increasing the hazard insured against;

(5)  omission or concealment of fact relating to an insurance application, rating, claim or coverage under this policy;

(6)  failure or refusal of an insured to:

(a)  provide information necessary to confirm exposure or determine the policy premium; or

(b)  comply with underwriting requirements;

(7)  a substantial change in the risk covered by the policy;

(8)  loss of reinsurance or substantial decrease in reinsurance;

(9)  the cancellation is for all insureds under such policies for a given class of insureds; or

(10)  any reason determined by the insurance commissioner.

b.  30 days before the effective date of cancellation if we cancel for any other reason.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U173-0702          Contains material copyright, Insurance Services Office,        Page 1 of 1
                              1997 with its permission.

Insured

10/26/2006   04:43PM

10/26/2006  16:37   6369498786              BARKLAGE BRETT              PAGE  41/43

POLICY NUMBER: GP 3156652                                    COMMERCIAL AUTO
                                                             CA 21 04 10 97

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISSOURI UNINSURED MOTORISTS COVERAGE

For a covered "auto" registered or principally garaged in, or "garage operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 03/11/2004 | Countersigned By: |
|---|---|
| Named Insured:<br>R.A. WHOLESALE<br>RICHARD AZAR, DBA | (Authorized Representative) |

SCHEDULE

| LIMIT OF INSURANCE | |
|---|---|
| $   50,000 | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

1. You.

2. If you are an individual, any "family member". However, this does not include any "family member", other than your spouse, who owns an "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

1. Any claim settled without our consent, if the settlement or judgment prejudices our right to recover payment.

CA 21 04 10 97              Copyright, Insurance Services Office, Inc., 1997              Page 1 of 3

                              Insured                      10/26/2006   04:43PM

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by any person while "occupying" or struck by any vehicle owned by you or any "family member" that is not a covered "auto". However, this exclusion does not apply to you.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

D. Limit Of Insurance

1. Regardless of the number of "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

   However, if "bodily injury" to which this coverage applies is sustained by any person other than you or any "family member", the Limit of Insurance shown in the Schedule or Declarations for this coverage is also the most we will pay regardless of the number of covered "autos".

2. If there are two or more covered "autos" that are not trailers, and "bodily injury" is sustained by you or any "family member", our Limit Of Insurance for any one "accident" is the sum of the limits applicable to each covered "auto" which is not a "trailer". Subject to this maximum limit of liability for all damages:

   a. The most we will pay for all damages sustained in such "accident" by an "insured" other than you or any "family member" is that "insured's" pro rata share of the limit shown in the Schedule or Declarations for this coverage, at the time of the "accident".

   b. You or any "family member" who sustains "bodily injury" in such "accident" will also be entitled to a pro rata share of the limit described in Paragraph a. above.

   A person's pro rata share is the proportion that that person's damages bears to the total damages sustained by all "insureds".

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under medical payments or any workers' compensation, disability benefits or similar law.

E. Changes In Conditions

The conditions are changed for Missouri Uninsured Motorists Coverage as follows:

1. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. The following condition is added:

   ARBITRATION

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", both parties may agree to an arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties so agree, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

          Copyright, Insurance Services Office, Inc., 1997          CA 21 04 10 97

10/26/2006  04:43PM

## IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
### STATE OF MISSOURI

SHELTER INSURANCE COMPANIES   )
               )
  Plaintiff,         )   Cause No.: 0511-CV06370
               )
v.              )   Division No. 1
               )
RICHARD AZAR d/b/a R.A. WHOLESALE,  )
               )   **FILED**
and              )   **MAY 2 8 2008**
               )
JONATHAN DALE HEFFNER,    )   Circuit Clerk
               )  **ST. CHARLES COUNTY**
  Defendants.       )

### PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW & JUDGMENT

Plaintiff Shelter Insurance Companies appears through counsel Robert W. Cockerham, Richard D. Gerber and Richard L Woolf of Brown & James, P.C. and defendant Richard Azar d/b/a R.A. Wholesale appears through Joel D. Brett of Barklage, Brett, Martin, Wibbenmeyer & Hamill, P.C. Defendant Jonathan Dale Heffner, having been properly served with Petition and not responding thereto, fails to appear. The parties appearing hereby waive a jury trial and the cause is hereby submitted to the Court.

COME NOW Plaintiff Shelter Insurance Companies (hereinafter "Shelter") and Defendant Richard Azar d/b/a R.A. Wholesale (hereinafter "Defendant"), and for their Proposed Stipulation of Facts, state as follows:

Findings of Fact as to Liability: The facts in this matter are not in dispute; hence, the parties have submitted this matter based on the Stipulation of Facts, which the Court hereby adopts as the facts of this case. Furthermore, the Court receives into evidence the O'Fallon Police Department Offense/Incident Report and the O'Fallon Fire Protection District Report, which

1



EXHIBIT
2

indicate that the fire was caused by the negligence of Defendant Heffner, an employee of Richard Azar d/b/a R.A. Wholesale, while he was attempting to repair a fuel pump on a customer's automobile, allowing gasoline to spill out of the gas tank and onto himself and the floor of the Subject Property. After spilling said gasoline, Mr. Heffner proceeded to repair the automobile, grabbing a ratchet to continue the repairs, and in the process of grabbing the ratchet, Mr. Heffner lost his grip and dropped the ratchet into the gasoline on the floor of the Subject Property, causing a spark that ignited the gasoline, starting the fire and damaging the Subject Property.

Damages: The damages sustained by Shelter as a result of the fire are damages to the Subject Property only. The property damages sustained by Shelter were to property exclusively in the care, custody and control of Shelter's insured, Walter Schappe (hereinafter "Schappe"); Defendant Heffner did not maintain or have care, custody and control of Schappe's property for which Shelter is requesting damages in its Petition. Furthermore, in regard to the damaged Subject Property, said damaged property was never owned, rented to or occupied by Defendant Heffner but rather, Schappe exclusively owned and occupied said property.

The cost to repair the Subject Property, and the total damages sustained by Shelter as a result of Defendants' negligence, was $176,311.96 as evidenced by the United Services of St. Louis contract for restoration and repair.

That upon consideration of all the evidence submitted, this Court renders judgment in favor of Plaintiff Shelter Insurance Companies and against defendants Richard Azar d/b/a R.A. Wholesale and Jonathan Dale Heffner in the amount of $176,311.96.

SO ORDERED: _Ted House_          DATE: _5/28/08_

Honorable Ted House

CERTIFICATE OF TRUE COPY

I, Judy Zerr, Clerk of Circuit Court, within and for the County of St. Charles, State of Missouri, do certify that the foregoing is a true copy of an original document remaining on file and record in my office. Witness my hand and SEAL of said Court this _____ day of _____

_____ Circuit Clerk          By _____ DEPUTY

2

01/15/2008 02:56 PM

10/17/08   14:38   TO 6382580950
OCT-17-2005 14:18 From:

FROM : RA WHOLESALE          PHONE NO. : 6363798090

816942899

MFC:KC
CONCANNON

CINC KC
To:6362560952

PAGE   05

Oct. 17 2005 08:58AM P3

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

WALTER SCHAPPE,                    )
        Plaintiff,              )
                 )      Cause No.:
     v.                          )
                 )      Division No
RICHARD AZAR d/b/a R.A. WHOLESALE, )
Serve: 1172 West Terra Lane        )
     O'Fallon, Missouri 63366      )
                 )
     Defendant.                  )

## PETITION

COMES NOW Plaintiff Walter Schappe ("Plaintiff") and for his cause of action against Defendant Richard Azar d/b/a R.A. Wholesale, states as follows:

### COMMON ALLEGATIONS

1.    At all times referred to herein, Plaintiff was the owner and lessor of real property located at 1172 West Terra Lane, O'Fallon, Missouri, located in St. Charles County, State of Missouri (hereinafter "Subject Property").

2.    Defendant Richard Azar d/b/a R.A. Wholesale (hereinafter "Defendant Azar") operates a fictitious Missouri company, and at all times referred to herein was the lessee of Plaintiff and operated a used car lot and automobile repair shop at the Subject Property, owned by Plaintiff.

4.    On or about February 9, 2005, Jonathan Dale Heffner (hereinafter "Heffner"), while acting in the usual scope and course of his employment by Azar, was repairing vehicles at the Subject Property. Heffner carelessly spilled gasoline from a gas tank and simultaneously dropped a wrench in or near the spilled gasoline, causing an explosion and fire at the Subject Property.



EXHIBIT
B

01/15/2008 02:56 PM
10/17/2005 14:49    8169428993
10/17/05    14:38    66362 0950
OCT-17-2005 14:18 From:

FROM : RA WHOLESALE                    PHONE NO. : 6363798080

MFC:KC
CONCANNON

PAGE  05

CINC KC
To:6362560950
P.5/6

Oct., 17 2005 08:58AM P4

<u>COUNT 1</u>
<u>NEGLIGENCE</u>

5.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 4 of this Petition as if fully set forth herein.

6.     Heffner was acting in the usual course and scope of his employment for Defendant Azar; therefore, Defendant Azar is responsible for the acts of Heffner because of the doctrine of respondent superior.

7.     Defendant Azar owed Plaintiff a duty to properly, professionally, and carefully drain gasoline from the gas tanks of automobiles Defendant Azar is repairing, to properly operate and use repair tools and to repair automobiles in a professional, workmanlike manner.

8.     Defendant Azar breached said duty and was negligent in one or more of the following manners:

    a.    Defendant Azar negligently, carelessly, and improperly failed to train and instruct his employee Heffner;

    b.    Defendant Azar, by and through his employee Heffner, failed to properly drain gasoline from the gas tanks of automobiles under repair;

    c.    Defendant Azar, by and through his employee Heffner, negligently operated and handled repair tools;

    d.    Defendant Azar, by and through his employee Heffner, negligently failed to perform repairs in a professional, workmanlike manner; and

    e.    Defendant Azar failed to assist Heffner in handling the gas tank of an automobile in repair.

9.     As a direct and proximate result of the aforementioned acts, Plaintiff sustained property damage in the approximate amount of $176,000.00.

2

01/15/2008 02:56 PM
10/17/2005  15:49  8169428992
10/17/05  14:30  ☎6362     950
OCT-17-2005 14:11 From:

FROM : RA WHOLESALE

MFC:KC
CONCANNON

To:63625 0950

PHONE NO. : 6373798990

PAGE  07
008/008
P.8/6

CINC KC
P.6/6

Oct. 17 2005 08:59AM P5

WHEREFORE, Plaintiff prays this Court to grant judgment in his favor and against Defendant Azar in an amount in excess of $25,000.00, and for his costs, interest, and for any other further relief this Court deems just and proper.

Robert W Cockerham, #31984
BROWN & JAMES, P.C.
Attorneys for Plaintiff
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2770
(314) 421-3400
(314) 421-3128 (Facsimile)

#7831325

3